**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

```
_____
                               )
PHOTOGRAPHIC ILLUSTRATORS       )
CORPORATION,                    )
                               )
             Plaintiff,         )
                               ) Civil Action No. 14-11818-PBS
             v.                 )
                               )
ORGILL, INC. and FARM & CITY    )
SUPPLY, LLC,                    )
                               )
             Defendants.        )
_____)
```

<u>**MEMORANDUM AND ORDER**</u>

July 29, 2015

Saris, U.S.D.J.

**INTRODUCTION**

Plaintiff Photographic Illustrators Corporation (PIC), a Massachusetts corporation specializing in commercial photography, took photographs of lighting fixtures manufactured by Osram Sylvania (OSI), not party to this suit. Defendants Orgill, Inc. and Farm & City Supply, LLC are distributors of OSI products. PIC filed suit against the defendants alleging copyright infringement under 17 U.S.C. § 501 (Count I); mishandling of copyright management information under the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 1202 (Count II); and false designation of origin and false advertising under the Lanham Act, 15 U.S.C. §

1

1125(a) (Count III). The defendants seek summary judgment on all counts (Docket No. 54). PIC filed an opposition (Docket No. 58). After a review of the record and hearing, the defendants' motion for summary judgment is **DENIED** in part and **ALLOWED** in part as to Count I and **ALLOWED** in full as to Counts II and III.

## STATEMENT OF UNDISPUTED FACTS

The following facts are undisputed except where otherwise stated. All reasonable inferences are drawn in favor of PIC, the non-moving party.

A.   PIC's Copyright License with OSI

This case is about photographic images that Paul Picone, a photographer for PIC, took of OSI's light fixtures. Five of the images have Copyright Registration Certificates; twenty-nine were the subject of applications received by the United States Copyright Office between 2012 and 2013. PIC provides OSI with photographs of OSI products for use in sale and marketing. To this end, PIC had a licensing agreement with OSI, which gave OSI

> a non-exclusive, worldwide license in and to all the Images and the copyrights thereto to freely Use, sub-license Use, and permit Use, in its sole and absolute discretion, in perpetuity, anywhere in the world. Notwithstanding the foregoing, OSI may not sub-license images in exchange for valuable consideration such as a fee (e.g., as stock photography).

Docket No. 56, DeJaco Aff., Ex. 1. The term "Use" is to be given the broadest possible interpretation, and includes, but is not limited to, the right to "copy, edit, modify, prepare derivative

works, reproduce, transmit, display, broadcast, print, publish, use in connection with any media . . . and store in a database." Id. The licensing agreement also provided: "To the extent reasonably possible and practical, OSI shall . . . include a copyright notice indicating PIC as the copyright owner and/or include proper attribution indicating Paul Picone as the photographer for Images Used by OSI." Id.

B. OSI's Copyright Sublicense Agreement with Orgill

Defendant Orgill, a wholesale distributor for OSI, maintains a network of retail dealers who sell hardware, home improvement supplies, and building materials. Orgill's inventory includes numerous OSI products, and Orgill uses product information and images from OSI in its electronic and paper catalogues. Over the past decade, Orgill employee Dennis Sills has been the sole person responsible for procuring and managing OSI product images, including the images in question. Sills generally obtains these images from e-mail, Dropbox, OSI's external website, or OSI's internal web server. However, none of Orgill's employees specifically recalls the images at issue or how they were procured. It is disputed whether Orgill knew about the copyright license PIC had granted to OSI.

For the past five years, OSI has conducted twice-yearly reviews of its product images as they appear in Orgill's advertisements. OSI has never challenged the way that OSI images

appear in Orgill's catalogue or on its website.

On July 23, 2014 – after PIC filed suit – OSI and Orgill executed a confirmatory copyright sublicense agreement, effective *nunc pro tunc* as of June 1, 2006. Under the sublicensing agreement, OSI "confirm[ed] that it previously granted permission to Orgill to Use and to sublicense the right to Use the Images to its dealers in accordance with the terms of this Agreement." Docket No. 56, Ex. 2. Those terms stated that OSI

> is authorized to sublicense and permit Use . . . of certain photographs taken by Photographic Illustrators Corporation . . . [and] has permitted and sublicensed to Orgill to Use the Images . . . in connection with any media, including but not limited to advertising, packaging, promotional and collateral materials, and to sublicense that right to Use the Images to Orgill's dealers . . . .

Docket No. 56, Ex. 2. This agreement further stated,

> Orgill covenants to include (and instruct its sublicensees/dealers to include), to the extent reasonably possible and practical with respect to size, prominence, aesthetics, and Use, a copyright notice indicating PIC as the copyright owner of the Images.

Id. Specifically, the sublicensing agreement noted, "Orgill and its dealers/sublicensees shall include such copyright notice and/or attribution as a side note or footnote for Images appearing on websites and in catalogues." Id. Orgill finally covenanted "on its behalf and on behalf of its sublicensees/dealers that it will not remove any copyright notice from Images provided to Orgill from OSI before distributing any Images to its sublicensees/dealers." Id.

C.  Farm & City Supply

Defendant Farm & City Supply is one of Orgill's dealers.
Orgill provides its dealers with an e-commerce platform known as
ProShip. Through ProShip, Orgill populates an online store with
products that dealers then brand and publish with their own
names. To access ProShip, dealers must pay a $750 flat set-up fee
as well as a subsequent monthly fee. Dealers can obtain pictures
from the platform, including the PIC images. However, it is
disputed whether these fees cover the pictures. Orgill also has a
library of product information in a separate FTP (file transfer
protocol) server. The dealer may download product images and
other data after receiving a secure log-in to access the server.
Orgill does not charge its dealers any additional fee to obtain
pictures from the FTP server.[1] Farm & City obtained the images in
question from both the FTP server and the ProShip platform.

In order to market and sell Orgill's products, Farm & City
has a commercial website and an eBay "storefront." Farm & City
fills both the site and the store with product images and
information obtained from Orgill's online resources. For a time,
Farm & City placed a watermark reading "farmandcitysupply" across
the images appearing on its eBay storefront. Eventually, Farm &
City stopped adding its watermark to the images.

---

[1] It is not clear whether a dealer who has not already paid
the $750 fee may nevertheless obtain access to the FTP server.

On April 11, 2014, PIC filed suit against Orgill and Farm & City under the Copyright Act, the DMCA, and the Lanham Act, seeking permanent injunctive relief against any and all further infringement, the recall and destruction of all infringing copies made of the PIC images, and payment of actual damages, attorney's fees, and costs.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To succeed on a motion for summary judgment, the moving party must demonstrate that there is an "absence of evidence supporting the non-moving party's case." Sands v. Ridefilm Corp., 212 F.3d 657, 660 (1st Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

The burden then shifts to the non-moving party to set forth specific facts showing that there is a genuine issue of material fact for trial. Quinones v. Houser Buick, 436 F.3d 284, 289 (1st Cir. 2006). A genuine issue exists where the evidence is "sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). A material fact is "one that has the potential of affecting the outcome of the case." Calero-Cerezo v. U.S. Dep't of Justice, 355

F.3d 6, 19 (1st Cir. 2004).

"If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted). Summary judgment may also be appropriate "even in cases where elusive concepts such as motive or intent are at issue if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996) (quotation marks, alterations, and ellipsis omitted). In its review of the evidence, the Court must examine the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. Sands, 212 F.3d at 661. Ultimately, the Court is required to "determine if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Id. (quotation marks omitted).

### DISCUSSION

I.   **Copyright Infringement**

A.   *Implied License*

Pursuant to 17 U.S.C. § 501, anyone who violates the "exclusive rights" of a copyright owner infringes the copyright. However, a copyright owner may transfer a nonexclusive right to use the copyrighted material by means of a written license. Estate of Hevia v. Portrio Corp., 602 F.3d 34, 40-41 (1st Cir.

7

2010). Such a transfer may also "occur without any particular
formality, as by conduct manifesting the other's intent." Id.
(pointing out that implied licenses are of limited scope,
permitting use of copyrighted work only in a particular manner).
"Uses of the copyrighted work that stay within the scope of a
nonexclusive license are immunized from infringement suits." John
G. Danielson, Inc. v. Winchester-Conant Props., Inc., 322 F.3d
26, 40 (1st Cir. 2003). The burden of proving the existence of
such a license lies with the party claiming its protection. Id.
If the licensee makes out the existence of any license, the
burden shifts to the licensor to show that the licensee's use
exceeded the scope of that license. Bourne v. Walt Disney Co., 68
F.3d 621, 630 (2d Cir. 1995).

    As PIC conceded at the hearing, the defendants have borne
their burden of showing that OSI impliedly licensed Orgill's use
of the images. In accordance with longstanding business practice,
Dennis Sills has obtained product images from OSI since 1998[2]
"either by talking to [OSI's] rep" on the telephone, "calling
customer service and talking to whoever is there," or searching
OSI's external website. Docket No. 56-3, Sills Aff. at 22-23, 26.
Orgill then uses these materials (which include the images in
question) to advertise and sell OSI products through dealers like

---

[2] Sills began working at Orgill in 1998, and testified that
Orgill had been using OSI product images since long before that
date.

Farm & City. Although Sills does not recall receiving explicit permission from OSI to use the images, he stated that such permission had "been implied in more ways than I count," since "it's understood in our business that . . . I'm using their pictures to sell their products." Id. at 62-63. Moreover, Orgill has reviewed Orgill's catalogues twice a year for the past five years, and has never objected to the way that Orgill displays the images.

Since the defendants have shown that they received an implied license from OSI, the burden shifts to PIC to demonstrate that Orgill's use of the challenged images exceeded the scope of that license. Bourne, 68 F.3d at 30. As all parties now agree, OSI could not give Orgill rights that went beyond those it in fact had, since a "grantor may not convey greater rights than it owns." Gilliam v. Am. Broad. Cos., 538 F.2d 14, 20-21 (2d Cir. 1976). Accordingly, the defendants' use of the images must be measured against the terms of the original licensing agreement between PIC and OSI. OSI's subsequent implied license to Orgill cannot give Orgill more expansive rights than those PIC had previously granted to OSI. Id.

Orgill initially argued that the sublicensing agreement[3]

---

[3] PIC maintains that we should not consider the sublicensing agreement because it impermissibly purports to be retroactive. While there is not much case law on the subject, the Second Circuit has held that "retroactive transfers [of copyright ownership] violate basic principles of tort and contract law, and

governed its conduct even insofar as it afforded Orgill greater freedom to use the images than OSI had under the licensing agreement. Orgill alleged that the attribution requirements of ¶ 10 did not apply to OSI's ability to sublicense under ¶ 9, and maintained accordingly that OSI was entitled to sublicense rights to use not limited by the provisions of ¶ 10. Docket No. 89, Hrg. Tr. at 47-48. But both defendants conceded at the hearing that OSI could not validly sublicense a right to use the images that was larger in scope than its own. Id. at 10-11.

Accordingly, the licensing agreement between PIC and OSI – not the sublicensing agreement between OSI and Orgill – provides the relevant benchmark for the defendants' conduct. The licensing agreement gave OSI a "non-exclusive, worldwide license in and to all the Images and the copyrights thereto to freely Use, sub-license Use, and permit Use." Docket No. 56, DeJaco Aff., Ex. 1. The agreement limited this license in two respects. First, "OSI may not sub-license images in exchange for valuable consideration such as a fee (e.g., as stock photography)." Id. Moreover, OSI had certain obligations to display the images in question with proper attribution. "To the extent reasonably possible and practical," the Agreement reads, "OSI shall . . . include a

_____

undermine the policies embedded in the Copyright Act." Davis v. Blige, 505 F.2d 90, 97-98 (2d Cir. 1976). However, I decline to address this issue because, in any event, the sublicensing agreement lacks force to the extent that it exceeds the scope of the licensing agreement between PIC and OSI.

copyright notice indicating PIC as the copyright owner and/or include proper attribution indicating Paul Picone as the photographer for Images Used by OSI." Id.[4] Since these terms governed OSI's right to use the images, they establish, in turn, the minimum limitations on the defendants' use of the images. There are fact disputes as to fee, attribution, and the nature of the implied license OSI granted Orgill. Summary judgment on infringement is inappropriate.

    i.   Fee

    PIC submitted evidence that Orgill sublicensed the images to Farm & City for a fee. Orgill charged its dealers both an initial flat fee of $750 and a subsequent monthly fee to access the ProShip platform, which allowed dealers to obtain product images and various other e-commerce services. Orgill also offered product information and images to its dealers by means of an FTP server, for which Orgill charged no fee. It is undisputed that Farm & City obtained images from both the ProShip platform and

---

    [4] In their reply brief, the defendants argued that any applicable attribution requirements were merely covenants rather than conditions precedent to use of the images. See Graham v. Jones, 144 F.3d 229, 237 (2d Cir. 1998) (construing a licensing agreement under New York law). While the provisions of the confirmatory sublicensing agreement are explicitly labeled covenants, it is the licensing agreement that governs the defendants' conduct, and that agreement does not term its attribution requirements "covenants." Moreover, this complex area of the law was poorly briefed, and the Court declines to address it. See HSBC Realty Credit Corp. (USA) v. O'Neill, 745 F.3d 564, 577 (1st Cir. 2014) (arguments "not developed in a party's opening brief are waived").

the FTP server. Farm & City uploaded images from the FTP server to internet marketplaces like eBay and Amazon, and used images from the ProShip platform to populate its internal website.

The defendants contend that Orgill did not violate the licensing agreement's prohibition against sublicensing the images "in exchange for valuable consideration" because product images were available free of charge from the FTP server as well as for a fee from the ProShip platform. Docket No. 56-1, DeJaco Aff., Ex. A. But simply because Orgill provided product images for free in one forum does not diminish the fact that those images were available in another forum only following an initial payment. Orgill argues that, because the fees it charged for access to ProShip did not depend on how many images its customers downloaded or whether they downloaded any images at all, customers paid not for product images but for the ability to use the entire website platform. However, PIC presented evidence that Orgill required its clients to pay money in exchange for certain services and the images in question, and that Farm & City paid the fee to avail itself of this bundle. While the defendants' argument may impact the amount of damages, the record does not support summary judgment in their favor because there is no evidence that the flat fee is only attributable to products or services apart from the pictures.

　ii.　Attribution

PIC also submitted evidence that the defendants' conduct was out of step with the attribution requirements in ¶ 10 of the licensing agreement. At the hearing, the defendants acknowledged that they were bound by these requirements, but now contend that it would not have been "reasonably possible and practical" to include attribution on the images. In service of this argument, Orgill points to the testimony of its employee, David Pinson, who stated that Orgill typically "crop[s]" product images "for tighter fit." Docket No. 68, Ex. 1, Brown Aff., Ex. B at 19-21. On this basis, Orgill maintains that it could not reasonably have included PIC's copyright information given its need to "resize" images "as necessary to fit . . . product media." <u>Id.</u>

This is a low-watt argument. Orgill admitted at the hearing that, since the lawsuit, Orgill does include some attribution on OSI images in the form of a "sidenote or footnote for images appearing on websites and in catalogs." Docket No. 89, Hrg. Tr. at 15-16. While it may not be practical for the defendants to include PIC's full-sized copyright notice, PIC need not demonstrate as much to defeat a motion for summary judgment. PIC is only obliged to present evidence – as it has done – that the defendants failed to use any attribution whatsoever prior to suit but have apparently been able to include at least some attribution since learning of PIC's copyright interest in the images.

PIC has provided sufficient evidence that Orgill sublicensed the images to Farm & City for a fee by means of the ProShip platform and that both defendants failed to attribute the images to PIC as required by the initial licensing agreement. Moreover, there are issues of fact as to whether Orgill knew of PIC's existence and its copyright interest in the images prior to this lawsuit. Since the defendants have not shown that they are entitled to judgment on PIC's copyright infringement claim as a matter of law, their motion for summary judgment is **DENIED** as to Count I.

B.   *Innocent Infringement*

The defendants also contend that any infringement was inadvertent and therefore innocent under 17 U.S.C. § 504(c)(2). Pursuant to this section, if the court finds that an infringer "was not aware and had no reason to believe that his or her acts constituted an infringement of copyright," it may "reduce the award of statutory damages to a sum of not less than $200."

Factual disputes as to whether Orgill knew of PIC's copyright interest in the images preclude summary judgment on this point as well. On the one hand, Orgill submitted evidence that it had never heard of PIC until the onset of this lawsuit and that, at all relevant times, it believed its use of the images was licensed. Dennis Sills stated that he only obtained OSI product images from OSI itself in accordance with Orgill's

14

company policy, and that none of the images he received contained
any copyright information. Orgill also averred that was aware of
no limitations on its use of the images.

But, as PIC points out, Orgill's testimony contradicts the
terms of the sublicensing agreement. That agreement purportedly
codified the terms of a pre-existing agreement between Orgill and
OSI, "confirm[ing] that [OSI] previously granted permission to
Orgill to Use the Images . . . in accordance with the terms of
this Agreement." Docket No. 56, Crockett Aff., Ex. 2. Pursuant to
one such term, Orgill covenanted to include "a copyright notice
indicating PIC as the copyright owner of the Images." Id. Since
the terms of the sublicensing agreement reference PIC's copyright
interest in the images, PIC argues, Orgill must have been aware
of PIC's existence prior to suit, and thus known that any failure
to attribute the images to PIC might constitute infringement.
This evidence creates a factual dispute. Orgill cannot have its
lightbulb and eat it, too – either it always knew that PIC
existed and that there were certain limitations on its use of the
images, or else Orgill did not then, and does not now, know of
any such limitations.

In light of these issues of fact, I **DENY** the motion for
summary judgment as to whether any infringement by Orgill was
innocent within the meaning of the Copyright Act. "As a general
rule, a party's state of mind (such as knowledge or intent) is a

question of fact for the factfinder, to be determined after trial." Chanel, Inc. v. Italian Activewear of Fla., Inc., 931 F.2d 1472, 1476 (11th Cir. 1991) (issues of fact regarding defendants' knowledge precluded summary judgment in trademark infringement suit).

However, Farm & City is another story. Farm & City submitted undisputed evidence that it did not know PIC existed until this lawsuit was filed, that it obtained all of the images at issue from Orgill free of copyright markings, and that Orgill never advised it of any limitations on its use of the images. Moreover, since Farm & City was not party to the sublicensing agreement between OSI and Orgill, there is no indication whatsoever that it might have been aware of its duty to attribute the images to PIC. Accordingly, I **ALLOW** the motion for summary judgment as to the innocence of any infringement by Farm & City.

## II.  Integrity of Copyright Management Information

PIC also alleges violations of the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 1202. The DMCA provides that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement . . . provide copyright management information that is false." 17 U.S.C. § 1202(a). Section 1202(b) further states that

> [n]o person shall, without the authority of the copyright
> owner or the law – (1) intentionally remove or alter any
> copyright management information, (2) distribute or
> import for distribution copyright management information

16

> knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law . . . knowing . . . that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b). Copyright management information (CMI) includes, among other things, the title of the work, the author of the work, the name of the copyright owner, or other information set forth in a copyright notice. 17 U.S.C. § 1202(c). A cause of action under § 1202 may lie whenever copyright management information, "conveyed in connection with copies . . . of a work . . . including in digital form," is falsified or removed. Murphy v. Millennium Radio Grp. LLC, 650 F.3d 295, 301 (3rd Cir. 2011) (holding that removal of author's name in "gutter credit" near image fell within protection of § 1202).

According to PIC, Defendant Farm & City contravened § 1202(a) by adding a watermark reading "farmandcitysupply" to certain images acquired from OSI for use in its eBay storefront. PIC further contends that both defendants removed or altered PIC's CMI in violation of § 1202(b) before distributing the images. Farm & City argues that the watermark did not constitute CMI as courts have defined that term and that, in any event, it lacked the requisite intent to induce, enable, facilitate, or conceal infringement. Both defendants maintain that they did not remove any CMI belonging to PIC from the images in question.

A.   *Addition of false CMI*

17

PIC first claims that Farm & City added false CMI when it placed a watermark reading "farmandcitysupply" on those images appearing in its eBay storefront. Farm & City contends that it lacked the requisite intent to support liability under the DMCA.[5]

Farm & City prevails as a matter of law on this issue. To be liable for adding false CMI under § 1202(a), a defendant must intend to "induce, enable, facilitate, or conceal infringement." 17 U.S.C. § 1202(a). PIC points to the testimony of Jeret Koenig, a Farm & City employee, who explained that the watermark "allows whoever is buying the product to know that they're buying it from Farm & City Supply," thus helping to "differentiate yourself from other sellers" and "increase your sales and make money." Docket No. 56, DeJaco Aff., Ex. F. at 91, 116. On the basis of this testimony, PIC maintains that Farm & City used its watermark to indicate authorial ownership of the images. But this argument is beside the point. Even if Farm & City sought to do more than affiliate itself with the OSI products for sale, Farm & City did not intend to "induce, enable, facilitate, or conceal infringement," since it did not know of PIC's existence until this lawsuit was filed and was unaware that it had any attribution obligations. I **ALLOW** the defendant's motion for

---

[5] Farm & City also protests that, as a matter of law, its watermark does not constitute CMI. Because Farm & City is entitled to summary judgment on the basis of its intent argument, I need not address this separate theory.

summary judgment on this issue.

B.    *Removal of CMI*

Nor did PIC submit any evidence to support its claim that the defendants removed indicia of its authorship from the images. Indeed, there is no evidence that either defendant ever received any images containing copyright attribution information or any marks indicating PIC's proprietary interest in the first place. Orgill's employee testified that he had "never seen the copyright image on anything" and that "it's just never been discussed." Docket No. 56, DeJaco Aff., Ex. C at 92-93. On the contrary, the record suggests that the defendants only received unmarked images and were never instructed to include attribution.

PIC responds that Paul Picone submitted an affidavit stating that every image he gave to OSI had the PIC copyright attribution on it and that the Court should infer, on this basis alone, that the absence of that attribution on the images as displayed by the defendants means that the defendants removed the CMI. PIC attempts to marshal Boatman v. U.S. Racquetball Ass'n, 33 F. Supp. 3d 1264, 1275-76 (D. Colo. 2014), in service of this argument. In Boatman, the plaintiff asserted that certain images he gave to the defendant included CMI. When the defendant reproduced those photographs without CMI, the court concluded that "it was reasonable to infer that the Defendant . . . removed . . . [CMI]." Id. But Boatman is not on all fours with the

present case. Here, in contrast, PIC gave the images to OSI, who in turn provided them to Orgill. Given the existence of a third party that has not been deposed and is otherwise absent from the case, it would be too speculative to infer that Orgill removed CMI simply because Picone avers that OSI received images containing copyright information. Such an inference is even less warranted as to Farm & City. In short, there is no basis in the record to conclude that either defendant removed CMI from the images. Accordingly, summary judgment on this point is **ALLOWED**.

## III. False Designation of Origin

Finally, PIC alleges that Farm & City violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by placing the "farmandcitysupply" watermark on the images. Section 43(a) provides that

> (1) Any person who, on or in connection with any goods and services, or any container for goods, used in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which – (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). The Lanham Act was intended to make "actionable the deceptive and misleading use of marks" and to

"protect persons engaged in . . . commerce against unfair competition." However, the Supreme Court has been "careful to caution against misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright." TrafFix Devices, Inc. v. Marketing Displays, Inc., 532 U.S. 23, 29 (2001). PIC first argues, under Section 43(a)(1)(A), that Farm & City placed its watermark across the images appearing on its eBay site and thus falsely designated the origin of those images. PIC also contends that the watermark constituted a misrepresentation of the nature, characteristics, or qualities of the images under Section 43(a)(1)(B). Farm & City responds that PIC's Lanham Act claims both fail as a matter of law under the Supreme Court's decision in Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003).

Dastar involved an old television series about World War II that had fallen into the public domain after its copyright expired. Id. at 26-27. Dastar obtained videotapes of the original series, copied them, and produced a new series based on the original, editing the material down to half of its original length and inserting a new opening sequence, chapter title sequences, and narrated chapter instructions. Id. Dastar also created new packaging for its series and gave it a different title. Id. at 27. Dastar then sold its altered and refurbished series without crediting the original television show. Id.

21

Twentieth Century Fox, which owned the copyright to the original series, argued that Dastar's conduct constituted "reverse passing off" under Section 43(a) of the Lanham Act – that is, misrepresenting another's goods as one's own. Id. at 27-28.

The Supreme Court held that Section 43(a) did not support Fox's argument. Id. at 31-32. In the Court's view, "the most natural understanding of the 'origin' of 'goods' – the source of wares – is the producer of the tangible product sold in the marketplace." Id. at 31. The phrase "origin of goods" was, however, "incapable of connoting the person or entity that originated the ideas or communication that 'goods' embody or contain." Id. at 32. Accordingly, the Court concluded that the "origin of goods . . . refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." Id. at 37. Since Dastar was undoubtedly the manufacturer of the physical goods sold to the public – namely, the new, repackaged videotapes – it would "stretch the text" of the Lanham Act to afford Fox relief under Section 43(a). Id. at 32.

The Court rejected the notion that the "origin" of communicative products, like books or videos, could include "not merely the producer of the physical item . . . but also the creator of the content that the physical item conveys." Id. at 33. To afford communicative works such "special treatment," the

22

Court concluded, would "cause[] the Lanham Act to conflict with the law of copyright," which specifically addresses itself to such works. Id. However, the Court made clear that Fox's interest in the creative concept underlying Dastar's video series "is not left without protection," id. at 38, noting that Fox's claim "would undoubtedly be sustained if Dastar had bought some of [the original series] videotapes and merely repackaged them as its own." Id. at 31.

A.   *Section 43(a)(1)(A) – False Designation of Origin*

In light of Dastar, the defendants contend that PIC cannot proceed under Section 43(a)(1)(A) of the Lanham Act since the "tangible goods" at issue were OSI's lightbulbs, not PIC's photographs. PIC responds that the defendants' conduct lies squarely within Dastar's exception: when one party "merely repackages" the goods of another as its own. By adding its watermark without otherwise changing the images, PIC contends, Farm & City "merely repackaged" the images in just the fashion the Dastar court had envisioned.

Courts are split as to whether the Lanham Act encompasses the false designation of the origin of a photograph, not itself a "good" for sale to the public, used to advertise the object actually for sale. Some courts have held that parties who misrepresent the author of a photograph may be liable under the Lanham Act even when the photograph is not the good for sale. In

23

Cable v. Agent France Presse, 728 F. Supp. 2d 977, 981 (N.D. Ill. 2010), for example, a photographer sued a real estate firm that displayed his photographs of properties without proper attribution on its website. The court declined to dismiss the plaintiff's Lanham Act claim, concluding that defendants who "took the plaintiff's photos and repackaged them as their own without revision" could be liable under Dastar even where the good for sale was the *subject* of the photograph (the properties) and not the photograph itself. Id.; see also Defined Space, Inc. v. Lakeshore East, LLC, 797 F. Supp. 2d 896, 901 (N.D. Ill. 2011) (reaching same conclusion on identical facts); Gen. Sci. Corp. v. Sheervision, Inc., 2011 WL 3880489 at *3 (E.D. Mich. Sept. 2, 2011) (Lanham Act applicable to misrepresentation of "origin and nature of media used in marketing" where defendant used plaintiff's images to advertise surgical products without proper attribution). Cf. Levine v. Landy, 832 F. Supp. 2d 176, 181, 191 (N.D.N.Y. 2011) (defendant published plaintiff's photographs of Woodstock festival in a book without proper attribution; court concluded plaintiff sufficiently alleged false designation of origin under Lanham Act but did not address Dastar).

But other courts to address the question suggest that because "photographs are 'communicative products' protected by copyright, false designation of their authorship is not cognizable under section 43(a)(1)(a) [of the Lanham Act] after

Dastar." <u>Agent France Presse v. Morel</u>, 769 F. Supp. 2d 295, 307 (S.D.N.Y. 2011); <u>see also</u> <u>Masck v. Sports Illustrated</u>, 5 F. Supp. 3d 881, 886 (E.D. Mich. 2014) (Lanham Act not applicable where magazine published photographer's image of famous athlete without attribution); <u>Michael Grecco Photography, Inc. v. Everett Collection, Inc.</u>, 589 F. Supp. 2d 375, 387 (S.D.N.Y. 2008) (vacated in part on other grounds) (Lanham Act not applicable where Hollywood studios displayed photographer's images of celebrities on website without attribution); <u>Maule v. Phila. Media Holdings, LLC</u>, 710 F. Supp. 2d 511, 514 (E.D. Pa. 2008) (Lanham Act not applicable where newspaper removed plaintiff's watermark from photographs before using photographs in newspaper ads, since newspaper was the "good" for sale).

Although both positions have merit, I find the latter line of cases more persuasive, and conclude that PIC is not entitled to proceed under Section 43(a)(1)(A) of Lanham Act as a matter of law. The <u>Dastar</u> Court held that the phrase "origin of goods" refers to "the producer of the tangible goods that are offered for sale." 539 U.S. at 37. Although the Court also noted that the plaintiff's "claim would undoubtedly be sustained if Dastar had bought some of [the original] videotapes and merely repackaged them as its own," <u>id.</u> at 31, nothing in this language suggests that the Lanham Act provides a cause of action even where the misrepresentation in question did not concern the source of a

tangible good for sale to the public.

PIC alleges that Farm & City displayed its photographs with false attribution – the watermark – and, in doing so, misrepresented the "origin and nature" of those photographs. But after <u>Dastar</u>, the phrase "origin of goods" applies only to the producer of the tangible product sold in the marketplace. <u>Dastar</u>, 539 U.S. at 31. Here, that product is OSI's lightbulbs. While the defendant's failure to attribute the images to PIC is actionable under the Copyright Act, as discussed above, "it would be out of accord with the history and purpose of the Lanham Act" to afford PIC relief under trademark law as well. <u>Id.</u> at 32. As the Court stated in <u>Dastar</u>,

> [t]he consumer who buys a branded product does not automatically assume that the brand-name company is the same entity that came up with the idea for the product, or designed the product – and typically does not care whether it is. The words of the Lanham Act should not be stretched to cover matters that are typically of no consequence to consumers.

539 U.S. at 32-33. Just so here. Customers shopping on Farm & City's eBay storefront were interested in the lightbulbs they sought to purchase, not the author of the product images they viewed. There is no record evidence that any consumer believed that Farm & City's watermark indicated ownership of the photographs that depicted the lightbulbs. Accordingly, I **<u>ALLOW</u>** the defendants' motion for summary judgment on Count III as to Section 43(a)(1)(A).

B.   *Section 43(a)(1)(B) – False Advertising*

PIC also attempts to slot its claim into Section 43(a)(1)(B) of the Lanham Act, which prohibits the misrepresentation of the "nature, characteristics, qualities, or geographic origin of . . . goods" in connection with "commercial advertising or promotion." 15 U.S.C. 1125(a)(1)(B). This argument fails. For one thing, this argument was scarcely briefed, and neither party raised it at the hearing. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); Delaney v. Mass. Bay Transp. Auth., 24 F. Supp. 3d 121, 125 n.7 (D. Mass. 2014) (declining to consider issue not developed in opposition to summary judgment motion).

Moreover, "[t]he import of Dastar . . . cannot be avoided by shoe-horning a claim into section 43(a)(1)(B) rather than 43(a)(1)(A)." Morel, 769 F. Supp. 2d at 308. While the First Circuit has noted that Dastar "left open the possibility that some false authorship claims could be vindicated" under subsection (B), Zyla v. Wadsworth, 360 F.3d 243, 252 n.8 (1st Cir. 2004), it did not resolve that question, and other courts have held that authorship does not constitute part of the nature, characteristics, or qualities of a good for sale. As one court concluded,

> the holding in Dastar that the word "origin" in §
> 43(a)(1)(A) refers to producers, rather than authors,

27

necessarily implies that the words "nature, characteristics, [and] qualities" in § 43(a)(1)(B) cannot be read to refer to authorship.

Antidote Int'l Films, Inc. v. Bloomsbury Pub., PLC, 467 F. Supp. 2d 394, 400 (S.D.N.Y. 2006); see also Baden Sports, Inc. v. Molten USA, Inc., 556 F.3d 1300, 1307 (Fed Cir. 2009) (false authorship claims not actionable under subsection (B)); Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1144 (9th Cir. 2008) (licensing status of copyrighted recording not a "characteristic" under subsection (B)); Blake v. Prof'l Coin Grading Serv., 898 F. Supp. 2d 365, 384 (D. Mass. 2012) (authorship of coin grading system did not bear on "nature, characteristics, or qualities" of graded coins); Gary Friedrich Enters., LLC v. Marvel Enters., Inc., 713 F. Supp. 2d 215, 234 (S.D.N.Y. 2010) (misrepresentation of authorship not cognizable under subsection (B)); Robert Bosch LLC v. Pylon Mfg. Corp., 632 F. Supp. 2d 362, 366 n.4 (D. Del. 2009) ("false advertising claims for false designation of authorship would create an overlap between the Lanham and Patent Acts"). But see Clauson v. Eslinger, 455 F. Supp. 2d 256, 261-62 (S.D.N.Y. 2006) (Subsection (B) applicable where plaintiff alleged that film's promotional materials wrongly credit defendant as producer).

Accordingly, the defendants' motion for summary judgment on Count III as to subsection (B) is **ALLOWED.**

**ORDER**

For the foregoing reasons, Defendants' Motion for Summary Judgment (Docket No. 54) is **DENIED** in part and **ALLOWED** in part as to Count I but **ALLOWED** in full as to Counts II and III.

/s/ PATTI B. SARIS
PATTI B. SARIS
United States District Judge