```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

```
_____
                                       )
PHOTOGRAPHIC ILLUSTRATORS              )
CORPORATION,                           )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )      Civil Action
                                       )      No. 14-11818-PBS
                                       )
ORGILL, Inc.,                          )
                                       )
                    Defendant.         )
_____)
```

## MEMORANDUM AND ORDER

March 11, 2016

Saris, C.J.

## INTRODUCTION

Plaintiff Photographic Illustrators Corporation (PIC) is a Massachusetts corporation specializing in commercial photography, including photography of consumer products for advertising and product packaging. PIC took photographs of lighting fixtures manufactured by Osram Sylvania, Inc. (OSI), and entered into a licensing agreement with OSI regarding the product images in June 2006. The 2006 Agreement granted OSI a non-exclusive, worldwide license to use and sublicense the photographs with certain limitations: OSI could not sublicense the images in exchange for valuable consideration, such as a

1

fee, and, to the extent reasonably possible and practical, OSI had to display the images with proper attribution. Defendant Orgill, Inc. is a one of OSI's distributors. Orgill obtained the product images at issue in this case from OSI for use in its electronic and paper catalogues.

In April 2014, PIC filed suit against Orgill alleging copyright infringement under 17 U.S.C. § 501 (Count I); mishandling of copyright management information under the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 1202 (Count II); and false designation of origin and false advertising under the Lanham Act, 15 U.S.C. § 1125(a) (Count III). OSI admits that it learned of the case shortly after PIC filed suit, and that it has been in consistent communication with Orgill since that time. Three months after PIC filed suit, Orgill and OSI executed a confirmatory copyright sublicense agreement, effective *nunc pro tunc* as of June 1, 2006. The confirmatory agreement cites to and incorporates language from the 2006 Agreement between PIC and OSI, and explicitly references the complaint in the present action. During the course of this litigation, Orgill and OSI have also entered into a common-interest agreement.

On July 28, 2015, the Court allowed in part and denied in part Orgill's motion for summary judgment. See Photographic Illustrators Corp. v. Orgill, Inc., 118 F. Supp. 3d 398, 411 (D.

2

Mass. 2015). The Court assumes familiarity with the summary judgment order and the underlying facts of this case. In short, I allowed the defendant's motion on the DMCA and Lanham Act claims. With respect to the copyright infringement claim, I held that Orgill had received an implied license from OSI to use the images at issue, and that Orgill's "use of the images must be measured against the terms of the original licensing agreement between PIC and OSI." Id. at 403. The 2006 Agreement "provides the relevant benchmark for the defendants' conduct" because, as the parties agreed at the summary judgment hearing, "OSI could not give Orgill rights that went beyond those it in fact had." Id. at 403-04.[1] I denied Orgill's motion for summary judgment on the copyright infringement claim due to "fact disputes as to fee, attribution, and the nature of the implied license OSI granted Orgill." Id. at 404.

On December 17, 2015, OSI filed a motion to intervene as a matter of right, or in the alternative permissively, pursuant to Federal Rule of Civil Procedure 24. OSI argues that the "determination of OSI's rights under the 2006 Agreement will be essential to resolving PIC's claims" because of the Court's holding that the 2006 Agreement establishes the minimum

---

[1] The other original defendant in this case, Farm & City Supply, LLC, was dismissed after summary judgment. See Docket No. 111.

limitations on Orgill's use of the images. Docket No. 100 at 2. PIC counters that the motion is untimely because OSI waited over a year and a half—until after the close of fact discovery on liability and the Court's summary judgment decision—to move to intervene.

After hearing, the Court **DENIES** OSI's motion to intervene (Docket No. 99) because it is untimely. The only explanation OSI offers as to why it waited so long to move to intervene is that OSI believed the "defendants would have no difficulty showing that they were properly authorized to use PIC images because Orgill was an OSI customer that received images from OSI." Docket No. 100 at 7. In other words, OSI considered PIC's claim meritless. The First Circuit has explicitly rejected this argument twice, and held that motions to intervene were untimely when the putative intervenors delayed for less time than OSI did in this case.

## DISCUSSION

### I. Motion to Intervene as a Matter of Right

Federal Rule of Civil Procedure 24(a) provides for intervention as a matter of right on "timely motion" in two circumstances: (1) the putative intervenor "is given an unconditional right to intervene by federal statute," or (2) the putative intervenor "claims an interest relating to the property

or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." "Rule 24(a)(1) statutory intervenors need not show inadequacy of representation or that their interests may be impaired if not allowed to intervene." Ruiz v. Estelle, 161 F.3d 814, 828 (5th Cir. 1998) (internal quotation marks and citations omitted). Instead, to succeed on a motion to intervene under Rule 24(a)(1), a potential intervenor need only demonstrate (1) that its motion is timely and (2) that the statute clearly applies. See id. at 827-28; Moosehead Sanitary Dist. v. S. G. Phillips Corp., 610 F.2d 49, 52 n.6 (1st Cir. 1979) (noting "a party may intervene as of right upon timely application if unconditionally authorized to do so by federal law").

Here, § 501(b) of the Copyright Act provides that the Court "shall permit the intervention, of any person having or claiming an interest in the copyright" in an infringement action. 17 U.S.C. § 501(b). Although there are no circuit court cases on point, several district courts have concluded that § 501(b) creates an "unconditional right to intervene" under Federal Rule of Civil Procedure 24(a)(1). See Distribuidora De Discos Karen C. Por A. v. Universal Music Grp., Inc., No. 13-CV-7706, 2015 WL

5

4041993, at *3 (S.D.N.Y. July 2, 2015); Vestron, Inc. v. Home Box Office, Inc., No. 87-4603, 1987 WL 123012, at *2 (C.D. Cal. Nov. 20, 1987). PIC makes a strained textual argument that § 501(b) does not create such a right in this case, but does not offer compelling support for its interpretation of the Copyright Act. OSI does not address whether the statute creates an unconditional right to intervene, and instead argues that it is entitled to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2).

To succeed on a motion to intervene as of right under Rule 24(a)(2), a putative intervenor must demonstrate:

> (i) the timeliness of its motion to intervene; (ii) the existence of an interest relating to the property or transaction that forms the basis of the pending action; (iii) a realistic threat that the disposition of the action will impede its ability to protect that interest; and (iv) the lack of adequate representation of its position by any existing party.

R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 7 (1st Cir. 2009); see also In re Efron, 746 F.3d 30, 35 (1st Cir. 2014). The putative intervenor must satisfy all four preconditions; the "failure to satisfy any one of them dooms intervention." R & G Mortg. Corp., 584 F.3d at 7. "The first of these elements—timeliness—is the sentinel that guards the gateway to intervention." In re Efron, 746 F.3d at 35. Although the timeliness requirement "is often applied less strictly with

6

respect to intervention as of right," compared to permissive intervention, "even in the case of a motion to intervene as of right, the district court's discretion is appreciable, and the timeliness requirement retains considerable bite." R & G Mortg. Corp., 584 F.3d at 8. Therefore, here, regardless of whether Federal Rule of Civil Procedure 24(a)(1) or 24(a)(2) applies, OSI must demonstrate the timeliness of its motion to intervene.

## II. Timeliness

"A motion to intervene is timely if it is filed promptly after a person obtains actual or constructive notice that a pending case threatens to jeopardize his rights." R & G Mortg. Corp., 584 F.3d at 8. "Perfect knowledge of the particulars of the pending litigation is not essential to start the clock running; knowledge of a measurable risk to one's rights is enough." Id. The timeliness inquiry "involves more than merely checking off the pages of a calendar." In re Efron, 746 F.3d at 35. It is "inherently fact-sensitive and depends on the totality of the circumstances." R & G Mortg. Corp., 584 F.3d at 7. "In evaluating that mosaic, the status of the litigation at the time of the request for intervention is highly relevant. As a case progresses toward its ultimate conclusion, the scrutiny attached to a request for intervention necessarily intensifies." Id. (internal quotations marks and citations omitted). To determine

7

whether a motion to intervene is timely, the First Circuit considers:

> (i) the length of time that the putative intervenor knew that his interests were at risk before he moved to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention.

Id. "Each of these factors must be appraised in light of the posture of the case at the time the motion is made." Id. The first of these elements—"the length of time that the putative intervenor knew or reasonably should have known that his interest was imperiled before he deigned to seek intervention"—is the most important. In re Efron, 746 F.3d at 35.

### A. Length of Time that the Putative Intervenor Knew its Interests Were at Risk

Here, PIC argues that the motion is untimely because OSI has known that its interests in the 2006 Agreement were at risk since spring 2014. OSI learned of the suit shortly after its inception, but waited until after discovery on liability closed, and until after the Court issued a summary judgment order, to move to intervene. PIC highlights that OSI "again delayed filing its motion even after the Court issued its summary judgment opinion," as OSI did not file its motion until nearly six months after the Court issued that order. Docket No. 112 at 5.

8

OSI retorts that it "saw no need to intervene in the case until this Court issued its Decision interpreting the 2006 Agreement." Docket No. 100 at 7. In the earlier stages of litigation, OSI believed that the "defendants would have no difficulty showing that they were properly authorized to use PIC images because Orgill was an OSI customer that received images from OSI." Id. OSI emphasizes that the "very terms of the 2006 Agreement set forth that PIC was compensated millions of dollars for very broad rights to use the images," and "OSI obtained for its investment a very broad right to sublicense, which did not require PIC approval." Id. In short, OSI argues that the light did not go off that its interests were at risk until after the Court ruled on summary judgment because OSI considered PIC's likelihood of success dim under the terms of the 2006 Agreement.

The First Circuit has twice rejected similar excuses for not moving to intervene at an earlier date. See In re Efron, 746 F.3d at 35-36; Narragansett Indian Tribe v. Ribo, Inc., 868 F.2d 5, 7-8 (1st Cir. 1989). In In re Efron, the putative intervenor knew about the case "virtually from its inception," and waited more than nineteen months to intervene because he thought that the "suit was worthless and would surely fail at trial." 746 F.3d at 35-36. In Narragansett Indian Tribe, the proposed intervenors were aware of the suit for more than thirteen months

9

before they moved to intervene. 868 F.2d at 7. Again, "they believed that the lawsuit was frivolous; in their estimation, it would never go to trial, but would be dismissed." Id.

In both cases, the First Circuit emphasized that "[p]arties having knowledge of the pendency of litigation which may affect their interests sit idle at their peril," and held that the delay was inexcusable. In re Efron, 746 F.3d at 36; Narragansett Indian Tribe, 868 F.2d at 7. "A party cannot wilfully blind himself to facts that are perfectly apparent and then claim that he lacked knowledge of what those facts plainly portended." In re Efron, 746 F.3d at 36. Here, OSI waited twenty months—even longer than the parties in In re Efron and Narragansett Indian Tribe—for the same faulty reason: due to the 2006 Agreement, OSI did not think that PIC had a strong case against Orgill.

This argument, by its very terms, demonstrates that OSI was aware of the importance of the 2006 Agreement to the suit against Orgill from its inception. OSI attempts to simultaneously maintain that it saw no need to intervene earlier because it thought that the 2006 Agreement would protect its rights, and that it did not realize its rights under the 2006 Agreement were at risk until after the Court ruled on summary judgment and interpreted the agreement differently from OSI. In other words, OSI failed to consider the possibility that the

10

Court would disagree with OSI's interpretation of the contract, and find merit in PIC's claims. The First Circuit has made clear that "such a flimsy excuse simply will not wash." In re Efron, 746 F.3d at 36 (internal quotation marks and citations omitted).

**B. Prejudice to Existing Parties**

OSI next argues that the procedural posture of the case supports a finding of timeliness because discovery on damages has not yet begun.[2] Although discovery on liability closed on January 30, 2015, OSI contends that no additional discovery on liability is necessary because neither Orgill nor PIC chose to depose or otherwise obtain discovery from OSI. However, as PIC highlights, allowing OSI to intervene now, without reopening discovery on liability, could materially prejudice PIC precisely because neither existing party in the case sought discovery from OSI. The Court granted summary judgment against PIC on its DMCA claim in part due to OSI's absence from the case: "Given the existence of a third party that has not been deposed and is otherwise absent from the case, it would be too speculative to infer that Orgill removed [copyright management information] simply because [PIC's photographer] avers that OSI received images containing copyright information." Photographic

---

[2] The Court issued a stay on damages discovery on September 5, 2014. See Docket No. 35.

11

Illustrators Corp., 118 F. Supp. 3d at 408. Even if the Court reopens discovery on liability, PIC could be materially prejudiced, as the trial would likely be delayed beyond the time period necessary for any remaining limited discovery. See Caterino v. Barry, 922 F.2d 37, 41 (1st Cir. 1990).

### C. Prejudice to Putative Intervenor and Special Circumstances

OSI alleges that it will suffer prejudice if its motion is denied because "the actions taken by PIC in challenging Orgill's rights to use the photographs in question threatens to harm OSI's business relationships with entities like Orgill." Docket No. 100 at 10. OSI asserts that the Court's interpretation of the 2006 Agreement "could have ramifications on other cases brought by PIC against OSI customers and business partners." Id. OSI also cites the fact that "PIC recently filed a number of actions against OSI customers alleging copyright infringement," and that "PIC is attempting to gloss over the fact that it already bargained away the rights it purports to sue under" in the 2006 Agreement, as special circumstances that weigh in favor of a finding of timeliness. Id.

All of these risks have been present in the case since its inception. In the timeliness inquiry, "a preventable hardship weighs less heavily in the balance of harms." R & G Mortg. Corp., 584 F.3d at 9; see also In re Efron, 746 F.3d at 36-37

12

("But any such harm is largely attributable to Efron's lollygagging and, thus, Efron is in a peculiarly poor position to grouse about it."). OSI could have avoided any harm to its business relationships by acting to protect its interests sooner. The Court notes that OSI did move to intervene at a much earlier stage in the litigation in several of the other suits against OSI's customers pending in this District, and has been granted leave to do so.

OSI's argument about exceptional circumstances reduces to the fact that OSI disagrees with this Court's interpretation of the 2006 Agreement and the limitations it imposes on Orgill's use of the contested images. Thus, any prejudice to OSI if the Court denies intervention is of OSI's own making, and there are no special circumstances that tip the scales on intervention. Given that all four of the timeliness factors weigh in favor of finding OSI's motion to intervene untimely, I deny OSI's motion to intervene as a matter of right.

### III. **Permissive Intervention**

Under Federal Rule of Civil Procedure 24(b), the Court may permit anyone to intervene on "timely motion" who (1) "is given an unconditional right to intervene by a federal statute;" or (2) "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). The

13

First Circuit has held that "when a putative intervenor seeks both intervention as of right and permissive intervention, a finding of untimeliness with respect to the former normally applies to the latter (and, therefore, dooms the movant's quest for permissive intervention)." R & G Mortg. Corp., 584 F.3d at 11. Furthermore, the timeliness inquiry applies more strictly, and district courts have broader discretion, with respect to a motion for permissive intervention. See id. at 8.

Here, OSI does not make any separate arguments as to why its motion would be timely for purposes of permissive intervention if it is untimely with respect to intervention as a matter of right. Thus, the same analysis as to why the motion is untimely discussed above applies to OSI's request for permissive intervention. I deny the motion to intervene in its entirety.

## **ORDER**

OSI's Motion to Intervene (Docket No. 99) is **DENIED**.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge