**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

_____
                                       )
PHOTOGRAPHIC ILLUSTRATORS              )
CORPORATION,                           )
                                       )
                    Plaintiff,         )
                                       )          Civil Action
          v.                           )          No. 14-11818-PBS
                                       )
ORGILL, INC.,                          )
                                       )
                    Defendant.         )
_____)


**MEMORANDUM AND ORDER**

April 4, 2019

Saris, C.J.


**INTRODUCTION**

This copyright dispute involves photographs of lighting

products, like light bulbs. Plaintiff Photographic Illustrators

Corporation ("PIC"), a Massachusetts company specializing in

commercial photography, licensed photographs to Osram Sylvania,

Inc. ("OSI") of lighting products that OSI manufactures and

sells. Defendant Orgill, Inc. is a distributor of OSI products

and uses some of these images in its online and print marketing

materials. PIC brought claims against Orgill under the Copyright

Act, the Digital Millennium Copyright Act ("DMCA"), and the

Lanham Act based on Orgill's use of its photographs. In 2015,

the Court granted summary judgment to Orgill on the DMCA and

1

Lanham Act claims but denied Orgill's request for summary judgment on the copyright infringement claim. <u>See</u> <u>Photographic Illustrators Corp. v. Orgill, Inc.</u>, 118 F. Supp. 3d 398 (D. Mass. 2015) (<u>PIC</u>). The case was then stayed pending resolution of an arbitration involving PIC, OSI, and other distributors of OSI products. In November 2017, the arbitrator issued an award resolving all of the claims in the arbitration.

Orgill has now renewed its motion for summary judgment on the copyright infringement claim. Orgill asserts that it received a sublicense that authorized its use of PIC's images and argues that the arbitrator's award precludes PIC from contesting this defense. PIC has also moved for summary judgment, contending that Orgill did not receive a sublicense, its use of approval images falls outside its sublicense, and its sublicense is conditioned on including attribution to PIC on the images, which Orgill did not do.

After hearing, the Court **DENIES** PIC's motion for summary judgment (Docket No. 172) and **ALLOWS** Orgill's motion for summary judgment (Docket No. 167).

## FACTUAL BACKGROUND

The following facts are undisputed except where otherwise stated. The Court assumes familiarity with the background of the case from the prior summary judgment opinion. <u>See</u> <u>PIC</u>, 118 F. Supp. 3d at 400-02.

## I.  <u>PIC's Copyright License with OSI</u>

This case concerns photographic images that Paul Picone, a photographer for PIC, took of OSI's lighting products. PIC provided OSI with these images to use in sales and marketing. To this end, PIC had a licensing agreement with OSI (the "PIC-OSI Agreement"), which gave OSI "a non-exclusive, worldwide license in and to all the Images and the copyrights thereto to freely Use, sub-license Use, and permit Use, in its sole and absolute discretion, in perpetuity, anywhere in the world." Dkt. No. 173-11 ¶ 9. According to the terms of the PIC-OSI Agreement, "Use" is to be given the "great possible interpretation," and includes, but is not limited to, the right to "copy, edit, modify, prepare derivative works, reproduce, transmit, display, broadcast, print, publish, use in connection with any media . . . , and store in a database." <u>Id.</u> ¶ 2(d). The licensing agreement barred OSI from "sub-licens[ing] images in exchange for valuable consideration such as a fee (e.g., as stock photography)" (the "fee provision"). <u>Id.</u> ¶ 9. It also provided that, "[t]o the extent reasonably possible and practical, OSI shall . . . include a copyright notice indicating PIC as the copyright owner and/or include proper attribution indicating Paul Picone as the photographer for Images Used by OSI" (the "attribution requirement"). <u>Id.</u> ¶ 10(b).

## II.   OSI's Copyright Sublicense Agreement with Orgill

Orgill, a wholesale distributor for OSI, maintains a network of retail dealers who sell hardware, home improvement supplies, and building materials. Orgill's inventory includes almost one thousand OSI products, and Orgill uses images from OSI in its electronic and paper catalogues. It also makes images from OSI available for its dealers to use in advertising OSI products. Orgill has used thirty-four images for which PIC holds the copyright. Before this lawsuit began, Orgill did not have direct contact with PIC.

On July 23, 2014, after PIC filed this lawsuit, OSI and Orgill executed a Confirmatory Copyright Sublicense Agreement (the "Confirmatory Sublicense"), effective nunc pro tunc as of June 1, 2006. Under the Confirmatory Sublicense, OSI "confirm[ed] that it previously granted permission to Orgill to Use and to sublicense the right to Use the Images to its dealers." Dkt No. 56-13 ¶ 2, at 5. Its definition of "Use" is materially identical to the definition in the PIC-OSI Agreement. Id. ¶ 1(E), at 5. The Confirmatory Sublicense further states that "Orgill covenants to include (and instruct its sublicensees/dealers to include), to the extent reasonably possible and practical with respect to size, prominence, aesthetics, and Use, a copyright notice indicating PIC as the copyright owner of the Images." Id. ¶ 3(B), at 6.

4

## PROCEDURAL HISTORY

On April 11, 2014, PIC filed suit against Orgill and Farm & City, Inc., one of Orgill's dealers, in connection with their use of PIC's images of OSI products. PIC alleged copyright infringement under 17 U.S.C. § 501 (Count I); mishandling of copyright management information under the DMCA (Count II); and false designation of origin and false advertising under the Lanham Act (Count III). PIC sought permanent injunctive relief against any further infringement, the recall and destruction of all infringing copies of its images, and payment of actual damages, attorney's fees, and costs. PIC did not sue OSI, and the Court denied OSI's motion to intervene.[1]

Orgill moved for summary judgment on all counts in February 2015. In its memorandum and order issued on July 29, 2015, the Court granted Orgill summary judgment on PIC's DMCA and Lanham Act claims. See PIC, 118 F. Supp. 3d at 406-11. With regard to the copyright claim, the Court first held that Orgill received an implied sublicense from OSI to use PIC's images. Id. at 403. Orgill obtained the images from OSI's representatives and

---

[1]    PIC dismissed Farm & City with prejudice on December 31, 2015 after the Court granted Farm & City summary judgment on the DMCA and Lanham Act claims and held that it at most innocently infringed PIC's copyrights when it used photographs of OSI products it received from Orgill. See PIC, 118 F. Supp. 3d at 406-11.

external website, and OSI gave Orgill implied permission to use the images to sell its products. Id. OSI also reviewed Orgill's catalogues twice a year and never objected to its use of the images. Id.

Orgill argued that the Confirmatory Sublicense gave it greater rights to use the images than the PIC-OSI Agreement gave to OSI. The Court determined that the PIC-OSI Agreement "provide[d] the benchmark" for evaluating the lawfulness of Orgill's conduct because OSI could not sublicense rights to Orgill that went beyond the rights it licensed from PIC. Id. at 403-04. The Court then decided that PIC provided sufficient evidence to raise a genuine dispute as to whether Orgill infringed its copyrights. In particular, PIC put forth evidence that Orgill sublicensed the images for a fee to Farm & City and failed to include any attribution on the images before the lawsuit, which violated the fee provision and attribution requirement of the PIC-OSI Agreement. See id. at 404-05. Orgill argued that, even if it did infringe PIC's copyrights, it did not do so knowingly, but the Court found that the references to PIC in the Confirmatory Sublicense gave Orgill sufficient notice that PIC held the copyrights to the images. See id. at 405-06. Accordingly, the Court denied Orgill's motion for summary judgment on the copyright infringement claim. Id. at 406.

On January 26, 2016, pursuant to the arbitration clause within the PIC-OSI Agreement, OSI commenced an arbitration against PIC. OSI brought claims stemming from PIC's initiation of over thirty copyright lawsuits against OSI's customers, such as this suit against Orgill. PIC asserted counterclaims against OSI in the arbitration, including for copyright infringement for violating the fee provision and attribution requirement in the PIC-OSI Agreement. In October 2016, seven of the customers PIC sued for copyright infringement (but not Orgill) agreed to consolidate their lawsuits into the arbitration. At the request of both PIC and Orgill, the Court stayed this lawsuit in November 2016 pending resolution of the arbitration.

On November 20, 2017, the arbitrator issued a Partial Final Award that resolved all of the claims in the arbitration. As relevant here, the arbitrator found that the fee provision and attribution requirement were only covenants of the contract, not conditions on OSI's license to use the images. Accordingly, because covenants are only enforceable via contract law, OSI breached the PIC-OSI Agreement by violating the attribution requirement but did not commit copyright infringement. The arbitrator also determined that the PIC-OSI Agreement permitted OSI to impliedly sublicense use of the images to its customers, which it had done for the seven customers that were parties to

the arbitration. He therefore found that those customers also were not infringing PIC's copyrights by using its images.

On February 21, 2018, Orgill filed a renewed motion for summary judgment in this case. Orgill contends that the arbitrator conclusively determined that the attribution requirement is not a condition on its sublicense and thus cannot support a copyright infringement claim. In response, PIC filed its own motion for summary judgment. PIC argues that the Partial Final Award does not preclude its copyright infringement claim against Orgill, which was not a party to the arbitration. PIC also contends that Orgill's sublicense defense fails a matter of law because: 1) Orgill cannot prove that it had an implied sublicense to use the images; 2) the Confirmatory Sublicense made Orgill's sublicense conditional on the attribution requirement even though it was not a condition in the PIC-OSI Agreement; and 3) Orgill's use of approval images exceeded the scope of its sublicense.

**DISCUSSION**

**I.   Standard of Review**

Summary judgment is appropriate when there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue exists where the evidence "is such that a reasonable jury could resolve the point in the favor of the non-moving party."

<u>Rivera-Rivera v. Medina & Medina, Inc.</u>, 898 F.3d 77, 87 (1st Cir. 2018) (quoting <u>Cherkaoui v. City of Quincy</u>, 877 F.3d 14, 23-24 (1st Cir. 2017)). A material fact is one with the "potential of changing a case's outcome." <u>Doe v. Trs. of Bos. Coll.</u>, 892 F.3d 67, 79 (1st Cir. 2018). "The court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in [its] favor." <u>Carlson v. Univ. of New Eng.</u>, 899 F.3d 36, 43 (1st Cir. 2018). When the parties cross-move for summary judgment, the court must evaluate each motion "separately, drawing inferences against each movant in turn." <u>Lawless v. Steward Health Care Sys., LLC</u>, 894 F.3d 9, 21 (1st Cir. 2018) (quoting <u>EEOC v. Steamship Clerks Union</u>, 48 F.3d 594, 603 n.8 (1st Cir. 1995)).

The burden on a summary judgment motion first falls on the movant to identify "the portions of the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, that demonstrate the absence of any genuine issue of material fact." <u>Irobe v. U.S. Dep't of Agric.</u>, 890 F.3d 371, 377 (1st Cir. 2018) (quoting <u>Borges ex rel. S.M.B.W. v. Serrano-Isern</u>, 605 F.3d 1, 5 (1st Cir. 2010)). If the movant meets this "modest threshold," the burden shifts to non-movant to "point to materials of evidentiary quality" to demonstrate that the trier of fact could reasonably resolve the issue in its favor. <u>Id.</u> The court must deny summary judgment if the non-movant "adduces

competent evidence demonstrating the existence of a genuine dispute about a material fact." Theriault v. Genesis HealthCare LLC, 890 F.3d 342, 348 (1st Cir. 2018).

## II. Legal Standard

### A. Issue Preclusion

Under the doctrine of issue preclusion (or collateral estoppel), a party cannot relitigate factual or legal issues that were adjudicated in an earlier action if "(1) the issues raised in the two actions are the same; (2) the issue was actually litigated in the earlier action; (3) the issue was determined by a valid and binding final judgment; and (4) the determination of the issue was necessary to that judgment." Manganella v. Evanston Ins. Co., 700 F.3d 585, 591 (1st Cir. 2012). Issue preclusion applies not only to the "ultimate issue" in the first action but also to "necessary intermediate findings, even where those findings are not explicit." Id. (citation omitted).

For issue preclusion to apply, the "identity of the issues need not be absolute; rather, it is enough that the issues are in substance identical." Id. The "mere presence of a modicum of factual commonality does not establish the requisite identity of issues," however. Faigin v. Kelly, 184 F.3d 67, 78 (1st Cir. 1999). An issue was not actually litigated in the earlier action if its resolution "was based on something less than a full

10

adversarial presentation." Manganella, 700 F.3d at 594. The resolution of the litigated issue must also have been "necessary to the decision actually rendered," not just to reach the same outcome. Id.

Defensive nonmutual issue preclusion permits a defendant who was not a party to the earlier action to estop "a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant." Vargas-Colón v. Fundación Damas, Inc., 864 F.3d 14, 28 (1st Cir. 2017) (quoting Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 771 (1st Cir. 2010)). The application of defensive nonmutual issue preclusion is appropriate only when "the party against whom issue preclusion is asserted 'has had a full and fair opportunity for judicial resolution of the same issue.'" Id. (quoting Rodríguez-García, 610 F.3d at 771). In practice, determining whether the plaintiff had a full and fair opportunity to litigate the issue boils down to the same four-factor test applicable to issue preclusion more generally. See, e.g., Acevedo-Garcia v. Monroig, 351 F.3d 547, 575-76 (1st Cir. 2003). Courts retain discretion to refuse to apply nonmutual issue preclusion when "its application would badly distort matters before the jury or would not result in efficiency gains because litigation of the live issue may require introduction of some of the same evidence pertinent to

the estopped issues." Rodríguez-García, 610 F.3d at 772 (quotations and citation omitted).

Arbitral awards generally receive the same preclusive effect as judicial judgments. Manganella, 700 F.3d at 591; FleetBoston Fin. Corp. v. Alt, 638 F.3d 70, 79 (1st Cir. 2011). A defendant in litigation may invoke defensive nonmutual issue preclusion against a plaintiff who was involved in a prior arbitration against another party.[2] See, e.g., Manion v. Nagin, 394 F.3d 1062, 1066-67 (8th Cir. 2005); Boguslavsky v. S. Richmond Sec., Inc., 225 F.3d 127, 130 n.4 (2d Cir. 2000) (per curiam); Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery, 44 F.3d 800, 802 (9th Cir. 1995). Because of the difficulty in determining what exactly an arbitrator decided in an award, particularly when he or she does not provide an explanation, courts may have discretion as to whether to give an arbitral award preclusive effect. See FleetBoston, 638 F.3d at 80-81. In this case, the arbitrator wrote an extensive decision resolving all of the parties' claims and counterclaims. The Court has no

---

[2]    There is an open question of whether state or federal law governs the preclusive effect of an arbitral award. FleetBoston, 638 F.3d at 79 n.10; see also W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc., 765 F.3d 625, 629-30 (6th Cir. 2014) (surveying how courts have addressed this question). As the parties assume federal preclusion law applies, the Court does as well. In any event, federal and Massachusetts preclusion law are materially identical. See Manganella, 700 F.3d at 590-91.

difficulty applying the traditional requirements for issue
preclusion to this decision.

### B.    Copyright Infringement and License Defense

Under 17 U.S.C. § 501(a), "[a]nyone who violates the
exclusive rights of the copyright owner . . . is an infringer of
the copyright." To win on a copyright infringement claim, the
plaintiff must prove two elements: "(1) ownership of a valid
copyright, and (2) copying of constituent elements of the work
that are original." Soc'y of Holy Transfiguration Monastery,
Inc. v. Gregory, 689 F.3d 29, 39 (1st Cir. 2012) (quoting
Situation Mgmt. Sys., Inc. v. ASP. Consulting LLC, 560 F.3d 53,
58 (1st Cir. 2009)). A copyright owner may transfer a
nonexclusive right to use the copyright. Estate of Hevia v.
Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010). While this
transfer often occurs via writing, it "also may occur without
any particular formality, as by conduct manifesting the owner's
intent." Id. at 40-41. Such an "implied license" is limited and
only "permits the use of a copyrighted work in a particular
manner." Id. at 41 (quoting I.A.E., Inc. v. Shaver, 74 F.3d 768,
775 (7th Cir. 1996)). "Uses of a copyrighted work that stay
within the bounds of an implied license do not infringe the
copyright." Id.

The existence of a license authorizing use of copyrighted
material is an affirmative defense. Fed. R. Civ. P. 8(c)(1);

Spinelli v. Nat'l Football League, 903 F.3d 185, 197 (2d Cir. 2018). Accordingly, the burden of proving the existence of an implied license lies with the party claiming its protection. Estate of Hevia, 602 F.3d at 41. However, once the licensee demonstrates the existence of a license, the burden shifts to the licensor to show that the licensee's use exceeded the scope of the license. See Spinelli, 903 F.3d at 197.

Orgill does not dispute that PIC owns a valid copyright for the images or that it used PIC's images. However, Orgill contends that it received an implied sublicense from OSI to use the images and thus cannot be held liable for infringement. PIC counters that Orgill received no implied sublicense, Orgill violated a condition of its sublicense by failing to provide proper attribution on the images, and Orgill exceeded the scope of its sublicense by using approval images. The Court addresses PIC's three arguments in turn.

## III. **Existence of an Implied Sublicense**

PIC first argues that Orgill did not receive a sublicense from OSI to use its images, both based on the relationship between OSI and Orgill and because an implied sublicense is a legal impossibility. Orgill responds that the Partial Final Award precludes this challenge to the existence of its implied sublicense and that PIC's arguments fail on the merits.

### A.     Preclusive Effect of the Partial Final Award

Orgill correctly contends that the Partial Final Award precludes PIC from contesting that the PIC-OSI Agreement gave OSI the authority to grant implied sublicenses to its customers. In his Partial Final Award, the arbitrator wrote:

> Relying on the very broad language of paragraphs 2 and 9 of the Agreement, OSI allowed its customers Use of the PIC images without the need of written authorization. While PIC contends OSI was required to employ written sub-licenses, there is no such requirement in the Agreement, a matter conceded by Mr. Picone. The language in Paragraph 9 and the acknowledgment by PIC and its counsel that the Images could be and were intended to be Used by OSI's customers provides the basis for an implied license from OSI for such customer use of the Images.

Dkt. No. 169-1 at 44-45 (cleaned up).

This finding meets the four requirements for issue preclusion. OSI's authority to grant implied sublicenses to its customers was the same issue in the arbitration as here. Although Orgill was not itself involved in the arbitration, this issue goes to OSI's authority under the PIC-OSI Agreement, not how it utilized that authority with individual customers. The arbitrator's explanation makes clear that PIC and OSI actually litigated this issue, as PIC unsuccessfully argued that OSI had to use express sublicenses. The Partial Final Award is a final and binding judgment that receives preclusive effect. See Manganella, 700 F.3d at 591. The arbitrator's finding about the validity of the implied sublicenses was essential to his

15

conclusion that OSI's customers did not infringe PIC's copyrights. Given that this issue was thoroughly litigated in the arbitration, Orgill properly invokes defensive nonmutual issue preclusion to estop PIC from relitigating this question.

The Partial Final Award does not, however, preclude PIC from challenging whether OSI granted Orgill an implied sublicense. It is unclear whether the arbitrator decided that OSI gave all its customers implied sublicenses or just the customers who were parties to the arbitration. However, even if he did decide this issue as to all of OSI's customers, it was not necessary to do so to determine that only the customers who were parties to the arbitration did not commit copyright infringement.

The Partial Final Award also does not preclude PIC from arguing that implied sublicenses are a legal impossibility. Orgill provides no indication that PIC raised this issue in the arbitration. Instead, PIC argued that the PIC-OSI Agreement did not permit implied sublicensing. Thus, although the arbitrator implicitly assumed or decided that implied sublicenses were possible, the issue was not actually litigated.

### B.  Implied Sublicense

In its 2015 summary judgment ruling, the Court stated:

As PIC conceded at the hearing, the defendants have borne their burden of showing that OSI impliedly licensed Orgill's use of the images. In accordance

16

> with longstanding business practice, Dennis Sills has obtained product images from OSI since 1998 "either by talking to [OSI's] rep" on the telephone, "calling customer service and talking to whoever is there," or searching OSI's external website. Orgill then uses these materials (which include the images in question) to advertise and sell OSI products through dealers like Farm & City. Although Sills does not recall receiving explicit permission from OSI to use the images, he stated that such permission had "been implied in more ways than I count," since "it's understood in our business that . . . I'm using their pictures to sell their products." Moreover, Orgill has reviewed Orgill's catalogues twice a year for the past five years, and has never objected to the way that Orgill displays the images.

PIC, 118 F. Supp. 3d at 403 (alterations in original) (citations omitted).

Urging the Court to reconsider this opinion, PIC first argues that the Court improperly found an implied sublicense based solely on delivery of its images to Orgill. See 17 U.S.C. § 202 ("Transfer of ownership of any material object . . . does not of itself convey any rights in the copyrighted work embodied in the object . . . ."); Corbello v. DeVito, 777 F.3d 1058, 1067 (9th Cir. 2015) ("[T]he copyright statute forbids courts from inferring a transfer of copyright or a license from mere delivery of the material object in which the work is embodied."). The Court in its 2015 opinion did not, however, rely solely on delivery. It also pointed to Orgill's conversations with OSI representatives, the lack of objection from OSI to Orgill's use of the images, and the implied

17

permission Orgill stated it received from OSI. See PIC, 118 F.
Supp. 3d at 403; see also John G. Danielson, Inc. v. Winchester-
Conant Props., Inc., 322 F.3d 26, 41 (1st Cir. 2003) (permitting
consideration of delivery as one of multiple factors in
determining whether an implied sublicense exists). PIC did not
demonstrate a genuine issue of material fact as to the existence
of the sublicense. See PIC, 118 F. Supp. 3d at 403.

PIC also contends that copyright law does not recognize an
implied sublicense.[3] PIC points to the three-part test for
finding an implied license that the First Circuit utilized in
John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.,
"which requires that the licensee request the creation of the
work, the licensor create and deliver the work, and the licensor
intend that the licensee distribute the work." 322 F.3d at 41.
PIC claims Orgill cannot meet this standard because Orgill did
not even know it existed before the lawsuit, let alone request
that it create or deliver any of the images. More fundamentally,
PIC states that no court has ever recognized an implied

---

[3]    Orgill claims that PIC waived this argument by not raising
it in its opposition to Orgill's prior motion for summary
judgment. Orgill relies on the proposition that parties cannot
raise new arguments on a motion for reconsideration under
Federal Rule of Civil Procedure 59(e). See, e.g., United States
ex rel. Ge v. Takeda Pharm. Co., 737 F.3d 116, 126 (1st Cir.
2013). Rule 59(e) deals with motions to alter or amend a final
judgment, and the Court's 2015 summary judgment order was
interlocutory. Accordingly, PIC has not waived this argument.

sublicense from a licensee (as opposed to an implied license from a copyright owner) because creation of an implied license requires direct contact between the owner and licensee.

PIC's claim that an implied sublicense is a legal impossibility raises a novel question. No other court has directly addressed whether an implied sublicense is possible under these circumstances. However, there is no strict three-part test for an implied license that requires proof of request, delivery, and intent. Instead, the First Circuit has twice emphasized that the "touchstone for finding an implied license . . . is intent." Estate of Hevia, 602 F.3d at 41 (alteration in original); Danielson, 322 F.3d at 40. It has framed the implied license inquiry as "whether the totality of the parties' conduct indicates an intent to grant . . . permission." Estate of Hevia, 602 F.3d at 41 (quotation omitted); see also Conway v. Licata, 104 F. Supp. 3d 104, 123 (D. Mass. 2015) (reading First Circuit precedent as "noting the copyright owner's intent as the key to determining the existence of an implied license").

A number of other courts of appeals have similarly suggested that intent is the key to the existence of an implied license. See Corbello, 777 F.3d at 1067; Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1235 (11th Cir. 2010); Johnson v. Jones, 149 F.3d 494, 501-02 (6th Cir. 1998). But see Muhammad-

19

Ali v. Final Call, Inc., 832 F.3d 755, 762 (7th Cir. 2016)
(relying on the three-part test to show an implied license). The
Fifth Circuit has explicitly rejected the argument PIC advances
here. See Baisden v. I'm Ready Prods., Inc., 693 F.3d 491, 501
(5th Cir. 2012). The two leading copyright treatises agree. See
3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright
§ 10.03[A][7] (2018) (noting that, "[w]hen the totality of the
parties' conduct indicates an intent to grant such permission,
the result is a nonexclusive license" (footnote omitted)); 2
William F. Patry, Patry on Copyright § 5:131 (2019) (stating
that an implied license arises "when the circumstances . . .
demonstrate that the parties intended that the work would be
used for a specific purpose").

This focus on intent is consistent with the nature of an
implied license. An implied license is simply a type of implied-
in-fact contract. I.A.E., 74 F.3d at 776; Effects Assocs.,
Inc. v. Cohen, 908 F.2d 555, 559 n.7 (9th Cir. 1990). Implied-
in-fact contracts are created whenever the parties exhibit
"mutual agreement and intent to promise" in a way "not . . .
expressed in words." 1 Williston on Contracts § 1:5 (4th ed.
2018). An analysis into the existence of an implied license
should therefore focus on mutual agreement and intent.

The First Circuit has referenced the three-part test on
which PIC relies as a means of determining if a copyright owner

20

manifested the requisite intent for an implied license. <u>See</u>
<u>Estate of Hevia</u>, 602 F.3d at 41; <u>Danielson</u>, 322 F.3d at 41. It
has never stated, however, that the three elements of request,
delivery, and intent are the only way a defendant in a copyright
infringement suit can show that intent. <u>See</u> <u>Estate of Hevia</u>, 602
F.3d at 41 (describing the three-part test as "most commonly
used in determining if an implied license exists with respect to
most kinds of work"); <u>see also</u> Nimmer, <u>supra</u>, § 10.03[A][7]
(noting that it is "questionable . . . to transmute those three
factors into the only applicable test — and to hold that there
can be no implied license when one of those factors is absent"
(footnote omitted)); Patry, <u>supra</u>, § 5:131 (stating that these
three factors, "while perfectly acceptable, do not exhaust the
possibilities"). In fact, in <u>Estate of Hevia</u>, the First Circuit
skipped a separate analysis of request and delivery and found an
implied license based solely on intent. 602 F.3d at 41-43; <u>see</u>
<u>also</u> <u>Danielson</u>, 322 F.3d at 40-42 (also skipping the request and
delivery factors and focusing on intent, though ultimately
finding no implied license).

PIC relies heavily on an unpublished case from the District
of Oregon that states that an implied sublicense is a "legal
impossibility." <u>Catalogue Creatives, Inc. v. Pac. Spirit Corp.</u>,
No. CV 03-966-MO, 2005 WL 1950231, at *2 (D. Or. Aug. 15, 2005).
That case involved a purported implied sublicense granted by an

implied licensee. See id. ("[D]efendant has offered no case law supporting the proposition that the recipient of an implied license may grant an implied sublicense by its conduct."). It says nothing about whether, as here, an express licensee who was specifically authorized by the copyright owner to issue a sublicense can grant an implied sublicense.

Since only intent, not request and delivery, is a necessary element for finding an implied sublicense, it is not dispositive that Orgill did not have any direct contact with PIC. Instead, to determine whether Orgill received an implied sublicense, the Court must ask whether PIC intended to permit sublicensing when it licensed the images to OSI and whether OSI intended to sublicense the images to Orgill. As noted above, the arbitrator conclusively determined that PIC intended to permit OSI to sublicense the images. And PIC has provided no evidence to suggest that the Court erred in finding in its 2015 ruling that OSI intended to grant a sublicense when it provided the images to Orgill and allowed Orgill to obtain them from its system. PIC has had two opportunities to raise a genuine issue of material fact that OSI did not intend to grant Orgill a sublicense, and it has failed to do so.

## IV. **Attribution Requirement**

Because Orgill received a sublicense to use PIC's images, the burden shifts to PIC to show that Orgill's use of the images

exceeded the scope of its sublicense. See Spinelli, 903 F.3d at 197. In its 2015 summary judgment ruling, the Court held that PIC raised a genuine issue of material fact as to whether Orgill violated its sublicense by failing to include attribution to PIC or Picone on the images it used.[4] See PIC, 118 F. Supp. 3d at 405. The Court identified this attribution requirement in the PIC-OSI Agreement. See id. at 403-04. Orgill argues that the arbitrator conclusively determined that the attribution requirement is not a condition of its sublicense. The Court declined to address this issue in its prior ruling. See id. at 404 n.4.

PIC cannot relitigate the arbitrator's decision that the attribution requirement in the PIC-OSI Agreement is not a condition because it was the central issue in the arbitration and its resolution was necessary for the arbitrator to find that OSI was not liable for copyright infringement. But Orgill's sublicense could give it fewer rights than OSI has. See id. at 404 (referring to the terms "govern[ing] OSI's right to use the images" as "the minimum limitations on the [Orgill's] use of the images" (emphasis added)). PIC therefore argues that the

---

[4]    The Court in its prior ruling also declined to grant Orgill summary judgment on PIC's claim that it violated its sublicense by further sublicensing the images to its dealers for a fee. See PIC, 118 F. Supp. 3d at 404-05. PIC no longer presses this argument.

Confirmatory Sublicense between OSI and Orgill makes the attribution requirement a condition of Orgill's sublicense.[5] The arbitrator's decision does not preclude this argument because Orgill was not a party to the arbitration and OSI did not have similar confirmatory agreements with the customers involved in the arbitration.

### A.    Legal Standard

A defendant's liability for failure to comply with a provision of a license agreement "raises issues that lie at the intersection of copyright and contract law." MDY Indus., LLC v. Blizzard Entm't, Inc., 629 F.3d 928, 939 (9th Cir. 2010) (quoting Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115, 1122 (9th Cir. 1999)). "Generally, a 'copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement . . . .'" Jacobsen v. Katzer, 535 F.3d 1373, 1380 (Fed. Cir. 2008) (quoting Sun Microsystems, 188 F.3d at 1121). Accordingly, if the licensee breaches the terms ("covenants") of

---

[5]    At the hearing, PIC's counsel reiterated its argument from the first round of summary judgment briefing that the Confirmatory Sublicense was an invalid retroactive license. PIC does not raise this argument in its briefing on the renewed summary judgment motions. In any event, PIC now relies on the terms of the Confirmatory Sublicense for its argument that the attribution requirement is a condition, so the Court need not address the issue of the validity of the Confirmatory Sublicense.

the licensing agreement, it is only liable for breach of contract. See MDY Indus., 629 F.3d at 939.

However, if the licensee fails to satisfy a condition of the license, "it follows that the rights dependent on satisfaction of that condition have not been effectively granted, rendering any use . . . without authority," i.e., copyright infringement. Nimmer, supra, § 10.15[A][2]; see also Jacob Maxwell, Inc. v. Veeck, 110 F.3d 749, 753-54 (7th Cir. 1997) (stating that, if the terms at issue were conditions, "absent performance of the conditions, the 'license' would not have issued" and the use would have constituted copyright infringement). Thus, in order to sue for copyright infringement, the copyright owner "must demonstrate that the violated term . . . is a condition rather than a covenant." MDY Indus., 629 F.3d at 939.

State law governs whether a contractual term is a covenant or a condition. See id.; Nimmer, supra, § 10.15[A][1]. Under Massachusetts law, a "condition precedent defines an event which must occur before a contract becomes effective or before an obligation to perform arises under the contract." Mass. Mun. Wholesale Elec. Co. v. Town of Danvers, 577 N.E.2d 283, 288 (Mass. 1991). "If the condition is not fulfilled, the contract, or the obligations attached to the condition, may not be enforced." Id. A contractual term is a condition only when the

25

parties so intended. Id. "To ascertain intent, a court considers the words used by the parties, the agreement taken as a whole, and surrounding facts and circumstances." Id. Although not "absolutely necessary," the use of "[e]mphatic words," such as "if and when," "provided that," and "on condition that," are strong evidence that the parties intended to create a condition. Id. (quotations omitted). Without such words, a court will construe a contractual term as a condition only "if the intent of the parties . . . is clearly manifested in the contract as a whole." Id.

**B.  Analysis**

Orgill argues that the attribution requirement in the Confirmatory Sublicense is not a condition, and it is not liable for copyright infringement even if it failed to attribute the images to PIC or Picone. The Confirmatory Sublicense states that the attribution requirement is "[w]ithout effect on the rights of Orgill . . . to Use the Images as granted in" the preceding paragraph. Dkt. No. 56-13 ¶ 3(B), at 6. This statement demonstrates that the parties did not intend to render Orgill's sublicense ineffective for failure to comply with the attribution requirement. This interpretation is bolstered by the title of the section under which the attribution requirement falls: "Covenants." Dkt. No. 56-13 at 6. A contractual term may be both a condition and a covenant, see Jacobsen, 535 F.3d at

1380, so this title is not determinative. But it provides further confirmation that the parties saw the attribution requirement as a covenant whose violation would constitute a breach of contract, not as a condition on the validity of Orgill's sublicense.

PIC emphasizes that the Confirmatory Sublicense grants Orgill the right to "Use" its images and that it defines the term "Use" with "the broadest possible interpretation . . . , subject to the limitations herein." Dkt. No. 56-13 ¶¶ 1(E), 2, at 5 (emphasis added). It argues that "subject to" is emphatic language that demonstrates an intent to create a condition. "Subject to" is not, however, an example of such emphatic language. See Fantastic Fakes, Inc. v. Pickwick Int'l, Inc., 661 F.2d 479, 484 (5th Cir. Unit B Nov. 1981) (noting that "subject to" is ambiguous in this context); cf. Mass. Mun. Wholesale, 577 N.E.2d at 288 (leaving "subject to" out of a list of such emphatic language).

More importantly, the Confirmatory Sublicense makes Orgill's "Use" rights "subject to the limitations herein" but does not clearly state which limitations in the rest of agreement this phrase refers to. Given the unambiguous language prefacing the attribution requirement stating that it does not affect Orgill's "Use" rights, the attribution requirement is plainly not one of the "limitations herein." The structure of

the agreement distinguishes this case from <u>Jacobsen</u>, where the court held that the licensing agreement made an attribution requirement a condition because it clearly stated that the user could copy, modify, and distribute the work "provided that" he include an attribution. 535 F.3d at 1381.

PIC contends that reading the attribution requirement as a covenant, not a condition, renders the "subject to the limitations herein" language meaningless because there are no other limitations in the Confirmatory Sublicense to which the phrase could possibly refer. It is a fundamental principle of contract interpretation that a "contract is to be construed to give reasonable effect to each of its provision" and a court should not read a provision out of the contract. <u>Balles v. Babcock Power Inc.</u>, 70 N.E.3d 905, 916 (Mass. 2017) (quoting <u>J.A. Sullivan Corp. v. Commonwealth</u>, 494 N.E.2d 374, 378 (Mass. 1986)). The Court need not definitively determine all the other provisions in the Confirmatory Sublicense that are conditions, but Paragraph 5, which bars Orgill from transferring the right to use the images except as specified in Paragraph 2, is one condition. And reading the attribution requirement as a condition of the sublicense itself would render meaningless the clear language that the requirement is "[w]ithout effect on the rights of Orgill . . . to Use the Images as granted in" the preceding paragraph. Dkt. No. 56-13 ¶ 3(B), at 6.

28

Accordingly, the attribution requirement is not a condition on Orgill's sublicense. Even if Orgill used the images without attributing them to PIC or Picone, Orgill is not liable for copyright infringement.

**V.    Approval Images**

Finally, PIC argues that Orgill exceeded the scope of its sublicense by using preliminary "proofs" that it sent to OSI for approval ("approval images"). PIC contends that the PIC-OSI Agreement did not authorize OSI to use approval images and OSI therefore could not grant Orgill permission to use those images. PIC offers an affidavit from Picone who explains that he can identify the accused images as approval images based on the rugged edges around the products, which he removes in a final image, and the lack of drop shadow, which he adds in a final image.

Orgill contends that the arbitrator conclusively determined that the PIC-OSI Agreement permitted OSI to use approval images. The arbitrator did state that "Paragraphs 2 and 9 of the 2006 License Agreement worked in tandem to grant OSI the right to Use — and authorize Use of — all of PIC's images, past and future" and that the "Agreement's definition of 'Images' did not distinguish between PIC images sent for 'approval' purposes or in 'final' form." Dkt. No. 169-1 at 44. And after OSI admitted to using approval images right before the arbitration, the

29

arbitrator must have determined that its license permitted it do so as part of his finding that OSI had not committed copyright infringement.

However, OSI has not met its burden of demonstrating that this issue was actually litigated in the arbitration. Nothing in the Partial Final Award states that PIC argued that the PIC-OSI Agreement did not authorize use of approval images, and OSI has not submitted any briefs or transcripts showing that PIC made this argument. The fact that PIC had the chance to raise this issue in the arbitration does not render it "actually litigated" if its resolution "was based on something less than a full adversarial presentation." Manganella, 700 F.3d at 594; cf. Dunellen, LLC v. Getty Props. Corp., 567 F.3d 35, 38 (1st Cir. 2009) (noting that issue preclusion does not apply if the parties stipulated to the issue in the first proceeding).

Although PIC is not precluded from raising the approval images theory by the Partial Final Award, PIC did not adequately disclose the theory during discovery. A party must supplement an interrogatory response "in a timely manner if [it] learns that in some material respect . . . the response is incomplete." Fed. R. Civ. P. 26(e)(1)(A). Failure to do so may result in the exclusion of the omitted information, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). A district court has broad discretion to determine the

appropriate sanction for failure to supplement discovery responses. See id. 37(c)(1)(C); Genereux v. Raytheon Co., 754 F.3d 51, 59 (1st Cir. 2014) ("[P]reclusion is not automatic, and a lapse may be excused if the court determines that, in the particular circumstances, a different remedy is more condign.").

Orgill propounded an interrogatory asking PIC to explain the basis for its allegation that OSI never authorized Orgill's use of PIC's images. The closest PIC came to referencing the approval image theory in its initial or supplemental response was its statement that "Orgill exceeded the scope of any rights it could have been granted by [OSI] in at least two respects" and then describing its attribution requirement and fee provision theories. Id. at 9-10. This reference to "at least two" ways in which Orgill exceeded the scope of its license plainly did not put Orgill on notice that the question of approval images would be an issue in this litigation. See Anderson v. Cryovac, Inc., 862 F.2d 910, 929 (1st Cir. 1988) ("The purpose of discovery is to 'make a trial less a game of blindman's buff and more a fair contest with basic issues and facts disclosed to the fullest practicable extent." (quoting United States v. Proctor & Gamble, 356 U.S. 677, 682 (1958))). PIC's response to Orgill's interrogatory was materially incomplete because it omitted an entire theory upon which PIC relies to negate Orgill's license defense.

31

PIC's failure to disclose its approval images theory was not substantially justified or harmless. At the hearing, PIC's attorney stated that PIC did not advance this theory earlier because it had other meritorious arguments. However, a plaintiff is not allowed to PIC its battles and then seek to reopen a new front at the close of discovery. This type of strategic decision does not justify failing to disclose an entire theory upon which a motion for summary judgment is based. Picone's purported ability to easily recognize approval images belies any notion that PIC had no reason to be aware of Orgill's alleged use of approval images earlier. The failure to disclose was not harmless either, as it left Orgill with no discovery on the approval image issue. Orgill has no way of challenging the assertions in Picone's declaration that he did not intend to license use of approval images to OSI and that he recognizes some of the images Orgill used as approval images.

PIC filed its complaint in this case almost four years before moving for summary judgment on its copyright infringement claim. During these four years, PIC gave Orgill no indication that its use of approval images would be an issue, even though Picone asserts that he can identify approval images by sight. Given PIC's failure to excuse its delay and the length of this litigation, the Court declines to reopen discovery to permit Orgill to investigate its use of approval images and whether its

sublicense permits use of such images. Instead, the Court excludes the approval images theory pursuant to Federal Rule of Civil Procedure 37(c)(1).

## VI.   **Conclusion**

In its 2015 ruling, this Court held that Orgill received an implied sublicense from OSI to use PIC's images. PIC's arguments that this holding was erroneous are without merit. Although the Court held that PIC raised a genuine dispute of material fact as to whether Orgill violated the attribution requirement of its sublicense, PIC is estopped by the Partial Final Award from arguing that the PIC-OSI Agreement established the attribution requirement as a condition of Orgill's sublicense, and the Court is not persuaded that the attribution requirement is a condition of the Confirmatory Sublicense. The Court also excludes PIC's theory that Orgill exceeded the scope of its sublicense by using approval images because PIC failed to disclose this theory during discovery. Since Orgill received a sublicense to use PIC's images and did not exceed the scope of the sublicense, Orgill did not commit copyright infringement as a matter of law.

### ORDER

Accordingly, PIC's motion for summary judgment (Docket No. 172) is **DENIED**, and Orgill's motion for summary judgment (Docket No. 167) is **ALLOWED**.

SO ORDERED.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge